UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAIAH J. PETILLO, | 1:18-cv-00217-LJO-GSA-PC |
| Plaintiff, | **SCREENING ORDER** |
| vs. | **ORDER DISMISSING COMPLAINT FOR VIOLATION OF RULE 18, WITH LEAVE TO AMEND** |
| GALLIGER, et al., | **(ECF No. 1.)** |
| Defendants. | **THIRTY-DAY DEADLINE TO FILE AMENDED COMPLAINT** |

## I.     BACKGROUND

Isaiah J. Petillo ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On February 12, 2018, Plaintiff filed the Complaint commencing this action, which is now before the court for screening.  28 U.S.C. 1915A.  (ECF No. 1.)

## II.     SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

§ 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III.    SUMMARY OF COMPLAINT

Plaintiff is presently a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), incarcerated at Kern Valley State Prison in Delano, California. The events at issue in the Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there. Plaintiff names as defendants Captain Galliger, M. Magana (SHU Property Staff), Sergeant Hernandez, L. Vasquez (Mail Room Supervisor), Correctional Officer (C/O) Wilson, and C/O J. Fugate (collectively, "Defendants").

Plaintiff's allegations follow.

### 2016 -- Property Officer

In approximately August or September 2016, the property officer threw Plaintiff's property away without proper notice and without allowing him appropriate options. Plaintiff forwarded a self-addressed-stamped envelope in order for property staff to send his personal

photographs home. Plaintiff never got a response. Finally, when he did, all of his property including books, hygiene items, tech appliances, obituaries, and personal photos of deceased family members had been all thrown away. The pictures were of Plaintiff's family, mother, father, nieces, nephews, aunts, and girlfriends. The property officer told Plaintiff, with a snicker and a smile, to "602 it" or sue him like he sues the other officers. ECF No. 1 at 10:19.

### 2016 -- Sergeant Hernandez

Sometime between July and September 2016, Sergeant Hernandez pulled Plaintiff out of his cell. Hernandez had some undesirable books which he was supposed to give to Plaintiff, ten of Plaintiff's personal books. For no reason except retaliation, property staff did not give Plaintiff any of his privileged, allowed books and materials.

Plaintiff told Sergeant Hernandez that he would rather have his other books, which he requested in his 602 appeal. Hernandez said, "Take these or that's it -- file a lawsuit like you like to do." ECF No. 1 at 9:16. Hernandez said it with a sarcastic grimace and snicker, and walked off. Plaintiff's other books and the books presented to him were thrown away. Plaintiff did not literally refuse any books, and he was not given a chance to remedy the situation. Sergeant Hernandez fabricated his report so the law would work in his favor. All of Plaintiff's receipts were in the books he lost. Plaintiff suffered depression and felt deprived. The books had sentimental value.

### 2016 - Defendant Wilson

In approximately August 2016, C/O Wilson told Plaintiff that he was conducting a random cell search. This was around 7:00pm, which is not normal. However, after the search was conducted, Plaintiff found out it was intentional, due to an investigation by the Warden and ISU (Investigative Services Unit).

C/O Wilson would always call Plaintiff "Mister Lawsuit Guy." ECF No. 1 at 11:12. Plaintiff told him several times that "Mister Lawsuit Guy" is not his name and asked C/O Wilson to call him by his respected name or not at all. Id.

///

///

The night that C/O Wilson searched Plaintiff's cell, C/O Wilson picked up outgoing mail that Plaintiff was sending to E.P.S. Britt. Enclosed in the envelope was a letter and two photos. Britt never received the photos or letter.

Also, every time C/O Wilson passed out the unit's incoming mail, Wilson would pass out Plaintiff's mail late and always say, "Mister Lawsuit, you got mail," with a peurile demeanor and a snicker. ECF No. 1 at 11:23.

### 2016 -- Mail Staff

In approximately August 2016, Plaintiff's outgoing mail to his mother was either not received by her or received three weeks late, and mail to his brothers was received late or not at all. Plaintiff sent his nephew a photo, and he never received it. Also, two photos were missing that were never mailed out. On numerous occasions, the Mail Room Staff would reject and return Plaintiff's mail several weeks later for frivolous reasons, such as "I didn't put my cell number on the front," or "too many ounces/not enough stamps," for mail he was sending to the court and his family. ECF No. 1 at 12:17-18. However, these reasons were not true. Plaintiff put enough stamps and the mail was not overweight, because there were no more than five pieces of thin paper enclosed! Plaintiff's sisters send him mail, and in late October 2017, he received a card and photos dated June 2017. E.P.S. Britt sent Plaintiff nine photos on September 15, 2017, and as of November 29, 2017, he had not received them. Plaintiff suffers from depression, deprivation, and anxiety.

### November 9, 2017 -- Defendants Galliger and Fugate

On November 9, 2017, Plaintiff informed C/O Yocum [not a defendant] that he was feeling depressed and suicidal. C/O Yocum immediately handcuffed Plaintiff. About thirty minutes later, an unknown male in street clothing began to berate Plaintiff, stating, "Are you high again - what are you high off now," "nothing wrong with you," and "you like to file lawsuits against my staff officer." ECF No. 1 at 4-5.[1] The unknown male stated, "I'm Captain

---

[1] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on Plaintiff's pagination of the Complaint.

Galliger, you're a Crip and Crips don't go suicidal, that's only for SNY," referring to inmates who are in protective custody in the Sensitive Needs Yard. Id. at 5:3-5. Plaintiff responded, "I don't give sh** who you is - [] you're [] acting puerile." Id. at 5:6-7. Plaintiff then calmly tried to alleviate the hostile situation. Captain Galliger continued to berate Plaintiff, stating, "I'll show you who the hell I am - where does this nigg** live, "I'm going to search your cell and fu** your pad up."[2] Id. at 5:11-14. Plaintiff told Galliger that "this will provoke unnecessary conflict between me and my cellmate," and Galliger said, "That's your problem, you should've thought of that before you started talking sh**." Id. at 5:15-18. Plaintiff tried to explain that searching his cell would be counterproductive and would force Galliger to also search Plaintiff's cellmate's area too. Plaintiff asked Galliger why he was being vindictive and retaliated against Plaintiff.

Plaintiff tried to talk to an unknown black male lieutenant and explain the consequences and severity of Captain Galliger's intentions to search Plaintiff's cell and his cellmate's belongings. The lieutenant said he understood, and that Galliger would not search Plaintiff's cell.

A few minutes later, two gang members approached Plaintiff and told him not to go suicidal. Plaintiff believes they were speaking on behalf of Captain Galliger. Plaintiff thought that if he would stop being suicidal, his cell would not be searched and torn apart, so he refused to go suicidal.

Plaintiff was told that his cell was searched and Captain Galliger tore up his cell and his cellmate's things. His cellmate's Galaxy 4g cell phone was confiscated, and the inmates' bed covers and sheets were taken.

Plaintiff was escorted from the program office back to his cell by officers J.D. Fugate and R. Day [not a defendant]. As Plaintiff entered the cell, he immediately took off his blue shirt and assumed a fighting position. Plaintiff and his cellmate had a two-minute conversation, during which Plaintiff tried to explain that it was Captain Galliger's fault that the cell was

---

[2] "Pad is a slang term for cell quarters." ECF No. 1 at 5:14-15.

searched and that Galliger was the cause of the conflict that had arisen between Plaintiff and his cellmate. After they talked, Plaintiff and Davis [cellmate] exchanged blows. Because of Galliger, Plaintiff was battered when he and his cellmate fought like dogs and cats. Meanwhile, officers Fugate and Day stood by watching. Plaintiff could have been stabbed to death and they would have just watched him die. The fight lasted at least ten minutes, and then C/O Fugate threw an O.C. pepper grenade at Plaintiff as he ordered Plaintiff to get down. Plaintiff got down. Fugate sprayed Plaintiff's cellmate with pepper spray in the face, and Plaintiff hurried up and lay on the lower bottom bunk, coughing and slightly blinded from the smoky blast from the grenade. As soon as Plaintiff "proned out," and complied, C/O Fugate began to spray him, hitting his elbows, the side of his face, his arms, shoulder, and torso. ECF No. 1 at 8. C/O Fugate fabricated his report.

Captain Galliger's actions resulted in Plaintiff being a victim of battery. Plaintiff suffered trauma, exhaustion, and anxiety. The burning and suffocation from the O.C. grenade and pepper spray caused Plaintiff to feel more depressed and suicidal. He suffered burning and irritated skin for three days, eye irritation, and temporary blurring of his eyesight. Plaintiff felt like he was on fire, O.C. spray dripped into his right eye, he was unable to sleep for a week due to the burning sensation, and his clothing and property in the cell were damaged. Plaintiff suffered a black, swollen left eye and lost sight in that eye for three weeks. While Plaintiff was in administrative segregation, his property was taken and he missed school, had no social group activities, suffered from headaches, and was fearful of Captain Galliger's power. Plaintiff was admitted to the hospital and took medications for his pain. As of November 29, 2017, Plaintiff's property, including legal documents, had not been returned to him by Captain Galliger's C-yard staff.

Plaintiff requests monetary damages and preliminary injunctive relief.[3]

///

///

---

[3] By separate order, findings and recommendations to deny Plaintiff's request for preliminary injunctive relief shall be issued.

6

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

///

## A.      Rule 18 – Unrelated Claims

Plaintiff alleges multiple claims in the Complaint that are largely unrelated.  Plaintiff may not proceed in one action on a myriad of unrelated claims against different staff members. "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim. Id. at 1349.

In this instance, the court finds five claims in Plaintiff's Complaint appear to be unrelated under Rule 18.  Plaintiff is advised that claims are not related merely because they involve his mail, his property, or cell searches.

(1)    In August or September 2016, the Property Officer threw Plaintiff's property away without proper notice and without allowing him appropriate options.

(2)    Sometime between July and September 2016, Sergeant Hernandez offered Plaintiff some books, which Plaintiff did not refuse, and Plaintiff's other books and the books presented to him were thrown away.

(3)    In August 2016, C/O Wilson told Plaintiff that he was conducting a random cell search and took some of Plaintiff's outgoing mail, which was never delivered.

(4)     In August 2016, the Mail Room Staff tampered with Plaintiff's incoming and outgoing mail.

(5)     In November 2017, Captain Galliger searched Plaintiff's and his cellmate's cell, causing the two inmates to fight, and C/O Fugate pepper sprayed them.

Plaintiff shall be granted leave to amend the Complaint to include only claims that do not violate Rule 18. Plaintiff will not be permitted to pursue unrelated claims in this action. In amending, Plaintiff should determine which of the five claims listed above meet the requirements of Rules 18 and 20, and then reallege only related claims. If Plaintiff finds that one or more claims are related, he should inform the court of the reasons why he believes that they are related. Whichever claim(s) he chooses to proceed upon herein, the other unrelated claims must be pursued by way of a separate action(s). If Plaintiff's First Amended Complaint continues to violate Rule 18(a) despite this admonition, the court will decide which claims shall proceed.

In the following paragraphs, the court sets forth legal standards that pertain to the claims that Plaintiff appears to bring. Plaintiff should review these standards before preparing the First Amended Complaint, and should only bring claims upon which he believes he can succeed.

In the Complaint, Plaintiff mentions claims for inadequate medical care under the Eighth Amendment and for violation of his rights to free speech, religion, freedom of association, and access to courts under the First Amendment. The court finds no allegations in the Complaint concerning the violation of these rights and therefore does not address those claims here. If Plaintiff seeks to bring any of these claims in the First Amended Complaint, Plaintiff must allege facts clearly reflecting that his rights to medical care, access to courts, free speech, religion, and/or freedom of association were violated.

**B.      Excessive Force – Eighth Amendment Claim**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth

Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### C.     Failure to Protect – Eighth Amendment Claim

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer v. Brennan, 511 U.S. 825, 833 (1970); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at

834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

**D.      Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559,

567-68 (9th Cir. 2005); <u>accord</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir. 2003). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." <u>Pratt</u>, 65 F.3d at 807 (9th Cir. 1995) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." <u>Pratt</u>, 65 F.3d at 808.

**E.    Verbal Harassment**

Mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987); <u>accord</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996).

**F.    Incoming and Outgoing Mail**

Prisoners have "a First Amendment right to send and receive mail." <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995). The right to receive mail is subject to substantial limitation, however, and the regulation or policy infringing on the right will be upheld if it is reasonably related to legitimate penological interests. <u>Prison Legal News v. Lehman</u>, 397F.3d 692, 699 (9th Cir. 2005) (citations omitted). Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." <u>Procunier v. Martinez</u>, 416 U.S. 396, 413 (1974) (overturned by <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989) only as test relates to *incoming mail* - <u>Turner</u>[4] test applies to incoming mail). Further, the mere fact that prison officials open and conduct a visual inspection of a prisoner's legal correspondence does not support a claim for

---

[4] <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987)

violation of a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996).

Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh, 490 U.S. at 413-14. The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

Isolated incidents of mail interference or tampering will not support a claim under § 1983 for violation of plaintiff's constitutional rights. See Davis v. Goord, 320 F.3d 346, 351 (2d. Cir. 2003); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990).

### G. Due Process

The Due Process Clause protects against the deprivation of life, liberty, and property without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id.

#### 1. Personal Property

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, a plaintiff has no due process claim based on the defendants' unauthorized deprivation of his personal property—whether intentional or negligent—if a meaningful state post-deprivation remedy for his loss is available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). California's tort claim process provides that adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal.

13

Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); see also Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); Kemp v. Skolnik, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to Hudson and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court.").

### 2.    Administrative Segregation

The Due Process Clause does not create a liberty interest in remaining in the general population or being free from administrative segregation. Hewitt v. Helms, 459 U.S. 460, 466–67 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin, 515 U.S. 472. Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration. Toussaint, 801 F.2d at 1091 (quoting Hewitt, 459 U.S. at 468). However, a state may a create liberty interest which would be protected by the Due Process Clause. Sandin, 515 U.S. at 483–84. A state prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan, 83 F.3d at 1088 (quoting Sandin, 515 U.S. at 484).

The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997). In Toussaint, the Ninth Circuit held that California's prison regulations which govern the removal and segregation decision, do not create a liberty interest. Toussaint, 801 F.2d at 1097–98. Such regulations are procedural requirements that, even if mandatory, do not raise a constitutionally cognizable liberty interest. Id. at 1098.

### 3.    False Reports

There is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14–cv–2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal.

2014); <u>see</u> <u>e.g.</u>, <u>Lee v. Whitten</u>, 2:12–cv–2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989); <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." <u>Jones v. Woodward</u>, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1410 (8th Cir. 1994); <u>McCrae v. Hankins</u>, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against having false information on his disciplinary reports or in his file.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff's Complaint violates Rule 18 and must be dismissed, with leave to amend. Plaintiff shall be granted thirty days in which to file a First Amended Complaint curing the deficiencies discussed above.

The First Amended Complaint should be brief, Fed. R. Civ. P. 8(a), and must only include claims related under Rule 18. Plaintiff should <u>choose one of the five claims</u> listed by the court in this order. If Plaintiff wishes to pursue all of his claims, he must file new cases based on each of the unrelated claims.

Plaintiff must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, <u>Iqbal</u>, 556 U.S. at 678; <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. <u>Iqbal</u>, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. <u>Jones</u>, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been

15

granted leave to add allegations of events occurring after the initiation of this suit on February 12, 2018.

Plaintiff is advised that an amended complaint supercedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Complaint, filed on February 12, 2018, is DISMISSED for an apparent violation of Rule 18, with leave to amend;

2.  The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.  Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified in this order;

4.  Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:18-cv-00217-LJO-GSA-PC; and

5.  If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:    **October 31, 2018**                    **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE