UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ISAIAH J. PETILLO,

          Plaintiff,

    v.

GALLIGER, et al.,

          Defendants.

**1:18-cv-00217-JLT-GSA-PC**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST REMEDIES BE GRANTED**
(ECF No. 57.)

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS**

## I.     PROCEDURAL HISTORY

Isaiah J. Petillo ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's First Amended Complaint filed on November 19, 2018, against defendant C/O J. Fugate for use of excessive force in violation of the Eighth Amendment; against defendants C/O J. Fugate and Captain J. Gallagher[1] for failing to protect Plaintiff in violation of the Eighth Amendment; and, against defendant Captain J. Gallagher for retaliation in violation of the First Amendment. (ECF No. 18.)

---

[1] Sued as Galliger.

1

On November 10, 2021, defendants Fugate and Gallagher ("Defendants") filed a motion for summary judgment for Plaintiff's failure to exhaust administrative remedies.[2] (ECF No. 57.) On December 6, 2021, Plaintiff filed an opposition to the motion. (ECF No. 61.) On January 13, 2022, Defendants filed a reply to the opposition. (ECF No. 69.)

On January 18, 2022, Plaintiff filed a motion to clear the record (ECF No. 70), and another opposition to the motion for summary judgment, (ECF No. 71.) On January 20, 2022, Defendants filed the Declaration of Jon Allin with exhibits containing excerpts of Plaintiff's deposition taken on January 7, 2022. (ECF No. 72.)

Defendants' motion for summary judgment was submitted upon the record on December 14, 2021, without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow the court finds that Defendants' motion for summary judgment should be granted.

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at the R.J. Donovan Correctional Facility in San Diego, California. At the time of the events at issue, Plaintiff was housed at Corcoran State Prison in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff's allegations follow:

### **Defendant Gallagher**

On November 9, 2017, Plaintiff informed C/O Yocum [not a defendant] that he was feeling depressed and suicidal. C/O Yocum immediately handcuffed Plaintiff. About thirty minutes later an unknown male in street clothing began to berate Plaintiff, stating, "Are you high again - what are you high off now," "nothing wrong with you," "you like to file lawsuits against my staff officer," and "you're a Crip and Crips don't go suicidal, that's only for SNY," referring to inmates who are in protective custody in the Sensitive Needs Yard. (First Amended Complaint, ECF No. 18 at 4-5.) The unknown male identified himself as Captain Gallagher. Plaintiff responded, "I don't give a sh** who you are - [] you're [] acting puerile." (Id. at 5.) Plaintiff

---

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 57-1.)

then calmly tried to alleviate the hostile situation. Captain Gallagher continued to berate Plaintiff stating, "I'll show you who the hell I am - where does this nigg** live," and "I'm going to search your cell and fu** your pad up." (Id.)  Plaintiff told Gallagher that "this will provoke unnecessary conflict between me and my cellmate," and Gallagher said, "That's your problem, you should've thought of that before you started talking sh**." (Id. at 6:2-3.) Plaintiff tried to explain that searching his cell would be counterproductive and would force Gallagher to also search Plaintiff's cellmate's area too. Plaintiff asked Gallagher why he was being vindictive and retaliating against Plaintiff.

Plaintiff tried to talk to an unknown black male lieutenant and explain the consequences and severity of Captain Gallagher's intentions to search Plaintiff's cell and his cellmate's belongings. The lieutenant said he understood and would talk to Gallagher, and most likely Gallagher would not search Plaintiff's cell.

A few minutes later two gang members approached Plaintiff and told him not to go suicidal. Plaintiff believes they were speaking on behalf of Captain Gallagher. Plaintiff felt intimidated enough to discontinue his efforts to seek mental health treatment. Under the assumption that his cell would not be searched and torn apart, Plaintiff told the clinician that he was okay and did not want to go suicidal.

Minutes later, Plaintiff was told that his cell had been searched and Captain Gallagher tore up his cell and his cellmate's things. His cellmate's Galaxy 4g cell phone was confiscated, and the inmates' bed covers were taken.

Plaintiff was escorted from the holding cage back to his building by defendant J. D. Fugate and Officer R. Day [not a defendant], following defendant Gallagher's instructions. Plaintiff wanted to prevent a conflict with his cellmate, Davis, and asked defendant Fugate not to return him to his cell. Another cell was available, and Ms. Medina [not a defendant] knew that Plaintiff needed to move out of his cell to avoid conflicts that were likely to arise between Plaintiff and his cellmate. When Plaintiff entered his cell he could tell by Davis's demeanor that he knew about Plaintiff's encounter with Captain Gallagher. Plaintiff immediately took off his blue shirt and assumed a fighting position. Plaintiff and Davis had a two-minute conversation

3

during which Plaintiff apologized for causing their living quarters to be searched, and Davis's cell phone to be confiscated. The cell phone was worth $1,500.00 at the prison and Plaintiff did not have that kind of money. Plaintiff tried to explain that it was Captain Gallagher's fault that the cell was searched and that Gallagher was the cause of the conflict that had arisen between Plaintiff and Davis. Gallagher had no legitimate reason to search their cell. Staff usually will not search a cell unless systematically authorized, or when an inmate brings it upon himself. Guards usually let the cellmate know why a search was conducted.

After they talked, Plaintiff and Davis exchanged blows. Because of Gallagher Plaintiff was a victim of assault and battery when Plaintiff and Davis fought. Plaintiff suffered a corneal eye abrasion in his right eye, pain in his eye and on his body, mental distress from the trauma, and burning from being pepper sprayed. Plaintiff's skin felt like it was on fire and he was unable to sleep for a week. Plaintiff's eyes burned, especially his right eye when pepper spray dripped into it causing temporary blindness and blurred vision.

**Defendant Fugate**

On November 9, 2017, after Plaintiff's argument with defendant Gallagher, Correctional Officers Defendant J. D. Fugate and R. Day [not a defendant] approached Plaintiff at the holding cage located in the program office. They ordered Plaintiff to cuff up and defendant Fugate asked Plaintiff, "Are you ready?" (Id. at 7:4-5.) Plaintiff told the officers that what they were doing was "fu**ed up," and asked Fugate not to send him back to his cell and cellmate Davis. (Id. at 7:6-7.) Another cell was available and Ms. Medina [not a defendant] knew that Plaintiff needed to move out of his cell to avoid conflicts that were likely to arise between Plaintiff and his cellmate. Plaintiff allowed defendant Fugate and C/O Day to escort him to his cell.

Plaintiff knew what would happen with Davis given the circumstances. Davis is much bigger, taller and stronger than Plaintiff. Plaintiff was attacked and the two inmates exchanged blows. When Plaintiff and Davis fought, Plaintiff was fighting for his life. Defendant Fugate stood by and watched Plaintiff be attacked. Plaintiff could have been stabbed to death and defendant Fugate would have just watched Plaintiff die. Ten minutes into the fight defendant Fugate threw a pepper grenade at Plaintiff and ordered him to get down, which Plaintiff did.

Plaintiff was stunned, coughing, and slightly blinded from the grenade's smoky blast. Defendant Fugate began to spray Plaintiff with more pepper spray while Plaintiff was on his stomach in the prone position lying on the bottom bunk face down. Fugate sprayed Plaintiff on his back upper torso, shoulders, elbows, neck, side of his face, and arms for about 8 minutes, for no reason. Plaintiff had complied with Fugate's order and was in a vulnerable submissive position. Plaintiff yelled at Fugate but did not want to move fearing it could be misconstrued that he was disobeying an order. Officer Fugate later gave Plaintiff paper towels and told him he had dried spray all over his back.

Plaintiff suffered pain in his eye and on his body, mental distress from the trauma and burning from being pepper sprayed. Plaintiff's skin felt like it was on fire, and he was unable to sleep for a week. Plaintiff's eyes burned, especially his right eye when pepper spray dripped into it causing temporary blindness and blurred vision. Plaintiff's clothing and other personal property were either lost, thrown away, or damaged because of the amount of pepper spray that coated a large portion of his living quarters.

## III.   SUMMARY JUDGMENT BASED ON EXHAUSTION

### A.   Legal Standards

#### 1.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

///

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself." Bock, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90. However, the Ninth Circuit has made clear:   A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. Id.

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing Bock, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id; Griffin, 557 F.3d at 1120; see also Bock, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case, the grievance process used at Corcoran State Prison where Plaintiff was incarcerated defines the boundaries of proper exhaustion.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino II, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake

rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance).  In such a case, "the inmate cannot pursue the necessary sequence of appeals." Sapp, 623 F.3d at 823.

## 2.   California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2017).  The process is initiated by submitting a CDCR Form 602.  Id. at § 3084.2(a) (2017).

On January 28, 2011, California prison regulations governing inmate grievances were revised.  Cal.Code Regs. tit. 15, § 3084.7 (2017).  Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal.Code Regs. tit. 15, § 3084.7 (2017). Under specific circumstances, the first level review may be bypassed.  Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3) (2017). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list

all staff members involved and shall describe their involvement in the issue." Cal.Code Regs. tit. 15, § 3084.2(a)(3) (2017).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal.Code Regs. tit. 15, § 3084.2(a)(4) (2017). An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal.Code Regs. tit. 15, § 3084.8(b) (2017).

At the time of the events giving rise to the present action in 2017, California prisoners were required to submit appeals within thirty calendar days of the event being appealed. Cal.Code Regs. tit. 15, § 3084.8(b) (2017).  The process was initiated by submission of the appeal to the first formal level.  Id. at § 3084.7(a) (2017).  Three levels of appeal were involved, including the first formal level, second formal level, and third formal level.  Id. at § 3084.7 (2017).  A final decision at the third level[3] of review satisfied the exhaustion requirement under 42 U.S.C. § 1997e(a).  Id. at § 3084.7(d)(3) (2017); see Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005).

In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler, 397 F.3d at 1183; Bennett, 293 F.3d at 1098.

### 3.   Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion.  Bock, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  On April 3, 2014, the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a).  Albino II, 747 F.3d at 1168–69.

---

[3] The third level is sometimes known as the Director's level.

Following the decision in <u>Albino II</u>, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[4] or (2) a motion for summary judgment under Rule 56.  <u>Id.</u>  If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e).  <u>Bock</u>, 549 U.S. at 223–24; <u>Lira</u>, 427 F.3d at 1175–76.

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Albino II</u>, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.")  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party."  <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).  The court must liberally construe Plaintiff's filings because he is a *pro se* prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  <u>Albino II</u>, 747 F.3d at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  <u>Id.</u>  The ultimate burden of proof remains with defendants, however.  <u>Id.</u>  "If material facts are disputed, summary judgment

---

[4] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint."  <u>Albino II</u>, 747 F.3d at 1162.

should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B.     Undisputed Facts**

In accordance with Local Rule 260(a), Defendants Gallagher and Fugate submit the following Statement of Undisputed Facts with references to the supporting evidence.  Unless otherwise noted the following facts are undisputed by the parties or as determined by the court based on a thorough review of the record.[5]

1. Petillo is a state prisoner in the lawful custody of California Department of Corrections and Rehabilitation (CDCR) and was housed at California State Prison, Corcoran. (First Am. Compl. at 1, ECF No. 18.)

2. Defendant Gallagher worked at Corcoran as a correctional captain, and Defendant Fugate worked at Corcoran as a correctional officer. (Id. at 2.)

3. Between the date of the alleged incident (November 9, 2017) and the date Petillo filed his complaint commencing this action (February 12, 2018), Petillo submitted only two inmate grievances related to Defendants Gallagher and Fugate: Grievance Log No. COR-17-06271 and Grievance Log No. COR-17-05971. (Mendez Decl. ¶¶ 8–15; Moseley Decl. ¶¶ 7–10.)

4. In Grievance Log No. COR-17-06271, Petillo alleged that, after he was assigned to Administrative Segregation on November 9, 2017, Defendant Gallagher would not relinquish his

---

[5] These facts are taken from Defendants' Statement of Undisputed Material Facts, ECF No. 62-2.  The court has considered all declarations and exhibits submitted in support of each statement. Because Plaintiff has failed to properly address Defendant's Statement of Undisputed Material Facts pursuant to Local Rule 260(b), accordingly the court may consider Defendant's assertions of fact as undisputed for purposes of this motion.  Id; Fed. R. Civ. P. 56(e)(2).

property but did not assert or address any allegations that Gallagher berated him, improperly searched his cell, or caused his cellmate to attack him. (Mendez Decl. ¶¶ 9–10 & Ex. 3; Moseley Decl. ¶ 9 & Ex. 3.)

5. Petillo pursued Grievance Log No. COR-17-06271 to the third level of review, and CDCR's Office of Appeals (OOA) issued a decision on June 15, 2018. (Moseley Decl. ¶ 9 & Ex. 3.)

6. In Grievance Log No. COR-17-05971, Petillo alleged that on November 9, 2017, Defendant Fugate and Correctional Officer Day (who is not a defendant) watched Petillo and his cellmate fight for ten minutes before throwing a pepper grenade into the cell and ordering the inmates to get down. He further alleged that they complied with the order but that Fugate unnecessarily sprayed Plaintiff with additional pepper spray. (Mendez Decl. ¶¶ 9–10 & Ex. 2; Moseley Decl. ¶ 8 & Ex. 2.)

7. Petillo pursued Grievance Log No. COR-17-05971 to the third level of review, and the OOA issued a decision on December 24, 2019. (Moseley Decl. ¶ 8 & Ex. 2.)

## C.    **Defendants' Motion for Summary Judgment**

Defendants J. Fugate and J. Gallagher argue that their motion for summary judgment should be granted because Plaintiff failed to exhaust his administrative remedies for his claims against them before initiating this action.  Defendants contend that Plaintiff never submitted a grievance alleging that Defendant Gallagher berated him, improperly searched his cell, or caused his cellmate to attack him.  Defendants assert that between the date of the alleged incident (November 9, 2017), and the date Petillo filed his complaint commencing this action (February 12, 2018), Petillo submitted only two inmate grievances related to Defendants Gallagher and Fugate. (Mendez Decl. ¶¶ 8–15; Moseley Decl. ¶¶ 7–10.), and he did not exhaust his remedies in either of them.

In Grievance Log No. COR-17-06271, submitted on June 15, 2019, Petillo alleged that, after he was assigned to Administrative Segregation on November 9, 2017, Defendant Gallagher refused to relinquish his property. (Mendez Decl. ¶¶ 9–10 & Ex. 3; Moseley Decl. ¶ 9 & Ex. 3.) Petillo's claims against Defendant Gallagher in this case are that, on November 9, 2017,

Defendant Gallagher violated his First and Eighth Amendment rights by berating him for filing lawsuits and requesting mental health care, improperly searching his cell and causing his cellmate to attack him. But Defendants allege that Petillo never submitted an inmate grievance addressing those claims.  Petillo submitted only one inmate grievance concerning Defendant Gallagher. (Mendez Decl. ¶¶ 8–15 & Exh. 3; Moseley Decl. ¶¶ 7–10 & Exh. 2.)

Petillo also submitted an inmate grievance that addressed the claims that Defendant Fugate failed to protect Plaintiff and used excessive force against him. In Grievance Log No. COR-17-05971, Petillo alleged that on November 9, 2017, Defendant Fugate and Correctional Officer Day (who is not a defendant) watched Petillo and his cellmate fight for ten minutes before throwing a pepper grenade into the cell, ordering the inmates to get down, and then unnecessarily spraying Petillo with pepper spray after the fight was over.  (Mendez Decl. ¶¶ 9–10 & Ex. 2; Moseley Decl. ¶ 8 & Ex. 2.)  Petillo pursued the grievance to the third level of review, and the OOA issued a decision on December 24, 2019. (Moseley Decl. ¶ 8 & Ex. 2.)  Because Petillo filed this action before exhausting his administrative remedies in grievance COR-17-05971, Defendants argue that the Court should grant summary judgment for Defendant Fugate.

### D. Defendants' Burden

The court finds that Defendants have carried their initial burden to prove that there was an available administrative remedy and that Plaintiff failed to exhaust that remedy.  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust the available remedies for his claims against Defendants Gallagher and Fugate, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

### E. Plaintiff's Opposition

In opposition to Defendants' motion Plaintiff claims that he filed more than two inmate grievances related to Defendants Gallagher and Fugate.  Plaintiff asserts that he filed 602 grievance log #CSPC-8-18-03589 – specifically a staff misconduct complaint against Captain Gallagher -- which was filed and submitted the same time Plaintiff submitted his grievance against Defendant Fugate.  Plaintiff asserts that the staff complaint against Defendant Gallagher

12

addresses Gallagher's misconduct, failure to protect Plaintiff and retaliation against Plaintiff. Plaintiff argues that J. Mendez's declaration in support of the motion for summary judgment is incorrect when Mendez says that "[a] review of the grievances was conducted to determine whether any grievances received between November 9, 2017 and February 12, 2018 alleged that Captain Gallagher berated Petillo." (ECF No. 61 at 3 ¶A.)  Likewise, Plaintiff argues that Howard E. Moseley incorrectly declared that he conducted a search of records and did not find any complaint regarding Defendant Gallagher's foul misconduct.  (Id. at 4 ¶B.)

Plaintiff also asserts that on or about November 20, 2017, he attempted to file a 602 grievance regarding staff misconduct against Defendant Gallagher, but the grievance was never processed.  The second time he filed a grievance was either on November 28, 2017, or around December 5, 2017, signed by E. Garcia, and Plaintiff sent it to the D.O.J. to ensure it was documented.  The third time was on or about December 17, 2017.  Plaintiff asserts that he forwarded an inmate request for interview informing the Warden that his "602 complaint against Captain Gallagher is not being processed."  Plaintiff alleges that on March 4, 2018, he attempted to exhaust his remedies but Corcoran State Prison "has magical abilities known to make things disappear." (ECF No. 61 at 5:14-15.)

Plaintiff also argues that Defendants are not entitled to summary judgment merely because Plaintiff brought this action before exhausting his administrative remedies because according to Jones v. Bock[6], administrative exhaustion is not a pleading requirement, so failure to include it in the Complaint is not a failure to state a claim.

Plaintiff also argues that Corcoran grievance authorities did not comply with the requirement that CDCR has 30 days to reply to use-of-force staff misconduct complaints, because prison officials took almost 3 years just to conclude the staff complaint investigation in grievance log # CSPS-7-17-5971, and the other grievance log # CSPC-8-03589 regarding Defendant Gallagher never arrived.

///

---

[6] Jones v. Bock, 549 U.S. 199, 213-15 (2007).

**F.     Discussion**

    **1.     Plaintiff's Claims**.  In the court's screening order issued on October 1, 2019, the undersigned found that Plaintiff stated three cognizable claims in the First Amended Complaint, for excessive force, failure to protect, and retaliation, as described here.  (ECF No. 27.)

    **1) Excessive Force** - against defendant C/O J. Fugate for use of excessive force in violation of the Eighth Amendment on Plaintiff's allegations that Defendant Fugate threw a pepper grenade at Plaintiff and sprayed him with pepper spray.  (First Amended Complaint (FAC), ECF No. 18 at 4-5.)

    **(2) Failure to Protect** - against defendants C/O J. Fugate and Captain J. Gallagher for failing to protect Plaintiff in violation of the Eighth Amendment.  Plaintiff alleged that Defendant Gallagher searched Plaintiff's cell and confiscated Plaintiff's roommate's phone and the inmates' bed covers.  Defendant Gallagher instructed Defendant Fugate to escort Plaintiff back to his cell where Plaintiff's roommate was present.  Plaintiff asked Defendant Fugate not to return him to his cell, but Defendant Fugate took him to the cell.  After Plaintiff entered his cell he and his roommate exchanged blows, injuring Plaintiff.  Defendant Fugate stood by and watched the fight.  (FAC No. 18 at 5-8.)

    **3) Retaliation** -  against defendant Captain J. Gallagher for retaliation in violation of the First Amendment.  Plaintiff alleged that Defendant Gallagher berated Plaintiff about filing prison grievances and told Plaintiff he was going to search Plaintiff's cell which Plaintiff shared with a roommate.  Defendant Gallagher searched the cell, confiscated the roommate's phone and took the inmates' bed covers.  (FAC, ECF No. 18 at 4-7.)

    **2.     Plaintiff's Grievances**

The alleged incidents at issue in this case took place on **November 9, 2017**, and Plaintiff's initial Complaint was filed on **February 12, 2018**.  (FAC, ECF No. 18.)  Defendants contend that between the date of the alleged incidents and the date the Complaint was filed, Plaintiff

submitted only two inmate grievances against Defendants Gallagher and Fugate: Grievance Log No. COR-17-06271 and Grievance Log No. COR-17-05971. (Mendez Decl. ¶¶ 8–15; Moseley Decl. ¶¶ 7–10.)

### (1) Grievance No. COR-17-05971, filed on November 9, 2017

> While I was being attacked/fighting with my cellie, Andrea Davis, two C/O's stood there watching the door #244 for 10 minutes.  Finally simultaneously as C/O Fugate said, "Get down, get down," he tossed a pepper grenade into cell #244 directly towards me Petillo #T-46601.  Powder flew onto my back & lower torso.  I complied & hid down in the lower bunk.  J. Fugate engaged with using O.C. Pepper spray.  I was laid out sprawled – proned out as Fugate ordered it, "Get down" – not moving or anything, as I just laid there, Fugate began to drench me, spraying me all in my back, neck, torso, buttocks & legs & back of the head. Pepper spray got inside the right eye in which I was punched. Note: No decontamination & literally burned for hours, left in a holding cage until two C/Os gave me wet paper towels.

(Exhibit 2, Declaration of J. Mendez, ECF No. 57-4 at 11.)

This grievance/appeal No. COR-17-05971 was exhausted at the Third Level on December 24, 2019.  However, it was exhausted <u>after</u> Plaintiff's case was filed on February 12, 2018.  Therefore, Plaintiff did not exhaust his remedies for this appeal <u>before</u> filing this lawsuit.

### (2)  Grievance No. COR-17-06271 & SVSP-18-1602, filed on November 28, 2017

> Refuse to deliver Inmate Petillo property. Cpt. Galliger has my property & won't relinquish it out of retaliation.  I've been assigned to Ad-Seg since 11-9-2017.  I went to committee on the 17th of Nov. 2017. (ICC).  My property was brought to me while I was in office on 11-9-2017. Lt. P. Hamas was on watch.  I believe C-yard Cpt. Galliger has my property & won't relinquish it due to the prior events he provoked.  Cpt. Galliger is violating Petillo's 1st Amend Const right.  Let this notice act as due diligence apprising staff of the alleged issue mention (note I am in multiple courts with active cases.)  Furthermore, under Title 15 & DOM no retaliation should be made against any inmate who files a 602.  However this is exactly happening, not to include the previous law suit pending against CCI Tehachapi staff.  Please be advised Petillo is filing a lawsuit against Cpt. Galliger & C/O Fugate & C/O Day.  Any other staff who assist these Defendants will be included. My judge is U.S. Magistrate Michael J. Seng of Dist Eastern Court of Calif. Fresno.

(Exhibit 3, Declaration of J. Mendez, ECF No. 57-4 at 36.)

This appeal No. COR-17-06271 & SVSP-18-1602 was denied at the Third Level on June 15, 2018.  (ECF No. 57-5 at 3 ¶9, 26.)  Even though Plaintiff exhausted his remedies using this appeal, again it was exhausted only <u>after</u> Plaintiff filed his lawsuit on February 12, 2018.  Further,

this property claim is not one of the claims against Captain Gallagher upon which this case proceeds.  Therefore, this appeal did not serve to exhaust remedies for any of Plaintiff's claims.

**Discussion**

Plaintiff's argument that he filed more than two grievances against Defendant Gallagher fails.  Plaintiff refers to Appeal log no. COR-18-3589, which Plaintiff represents was filed on November 9, 2017, and decided at the Third Level of review.  In his opposition filed on December 6, 2021, Plaintiff vehemently argues that this appeal is a staff complaint that addresses Defendant Gallagher's misconduct, failure to protect Plaintiff, and retaliation against Plaintiff.  Plaintiff argues that the declarations of J. Mendez and Moseley are not true because these declarants could not have reviewed Plaintiff's grievances as they stated, or they would have discovered this grievance.

However, Plaintiff later changed his story after he examined the appeal and realized that it did not concern Defendant Gallagher, but was instead a grievance by Plaintiff against C/O Guizer for inappropriately spraying Plaintiff with pepper-spray on June 14, 2018.    Plaintiff admitted in his deposition that Grievance No. 3589 did not address his claims in this lawsuit.

**Q.**  "Okay, well, let me ask -- the 602 that's 3589, the complaint is falsifying official report, wanton use of force. And it says 'On about June 14, 2018 inmate Petillo was wrongfully identified as an accomplice to inmate Child's foray. I was eight feet away from where the actual incident took place.'

Okay, so this 602 doesn't say anything about Gallagher or November 2017. Was there some -- would you agree that the grievance No. 3589 does not address your claims in this lawsuit?"

**A.**  "Yes. But -- damn, that's -- you right on that."

(Pltf's Deposition taken on Friday, January 7, 2022, ECF No. 72 at 13:23 – 14:8.)[7]

Therefore, Plaintiff did not exhaust any of his remedies for the claims in this case using Appeal log no. COR-18-3589.

---

[7] The pagination cited in this order reflects the pagination applied by the Court's electronic filing system, CM-ECF, and not the pagination found on the parties' documents.

The parties refer to other grievances/appeals discussed below filed by Plaintiff during the relevant time period, but these grievances did not pertain to any of Plaintiff's allegations against Defendants Gallagher or Fugate in the First Amended Complaint, therefore they did not exhaust any of Plaintiff's administrative remedies for any of the claims in this lawsuit.

### (3)  Grievance No. COR-17-06239, filed on December 4, 2017

From Trust Account stolen money violation.  I received $190.00 (one hundred ninety dollars) in total from Oct. 29, 2017 – Nov. 8, 2017, I received $ and I have not spent any money, neither to anyone besides restitution.  55% was taken & restitution from Court 2:16-cv-2513 CDC (see trust account) That's reasonable, which left me with a balance of $77.00.  However, my balance only says $10.00 and trust account D. Gear deduct $67.50 for unknown reason.  Talking about "other encumbrances – (WTF).  What other encumbrances  He was not specific!! at all.  he took $20 twice on Nov. 11, 2017 & $100 additionally twice on Nov. 8, 2017, actually $60.00 is stolen because no verification as to why he took my $. Unless he cannot do math.  I believe he assumed I would not catch on.  This is Corcoran trust account, 2nd time trying to pull same slick sh*t taking my $ unjustifiably, my wife/family works hard for that money!!

(Exhibit 4, Declaration of J. Mendez, ECF No. 57-4 at 47, 49.)

### (4)  Grievance No. COR-8-18-1271, filed on February 28, 2018, Response dated March 27, 2018

Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15 Section (CCR)(c)(11).  The issue under appeal has been resolved at a previous level.  Your appeal is dated 2/28/2018.  You requested a copy of a CDCR 837 from an incident you were involved in.  A copy is attached.  It appears your appeal issue has been resolved; therefore, this appeal has been cancelled.  Your appeal is being forwarded to you at SVSP.

(Exhibit 5, Declaration of J. Mendez, ECF No. 57-4 at 57.)

Plaintiff also asserts in his opposition filed on December 6, 2021, that on or about November 20, 2017, he attempted to file a 602 grievance regarding staff misconduct against Defendant Gallagher, but the grievance was never processed.  The second time he filed a grievance was either on November 28, 2017, or around December 5, 2017, signed by E. Garcia, and Plaintiff sent it to the D.O.J. to ensure it was documented.  The third time was on or about December 17, 2017.  Plaintiff asserts that he forwarded an inmate request for interview informing the Warden that his "602 complaint against Captain Gallagher is not being processed."  (ECF

No. 61 at 7-10.) Plaintiff alleges that on March 4, 2018, he attempted to exhaust his remedies, but Corcoran State Prison "has magical abilities known to make things disappear." (Id. at 5:14-15.)

Plaintiff later explained in his deposition taken on January 7, 2022, that the delays in processing appeals that he had referred to in his opposition to the summary judgment all had to do with Grievance COR-18-3589.

> **Q.** All right. So when you filed your opposition to the motion, you attached several form 22s asking about the status; right?
>
> **A.** Yes, sir.
>
> **Q.** And some letters talking about a delay in processing the appeal; right?
>
> **A.** Yes, sir.
>
> **Q.** And those all had to do with grievance No. 3589?
>
> **A.** Yes, sir.

(Deposition, ECF No. 72 at 7.)

Plaintiff argues that Defendants are not entitled to summary judgment merely because Plaintiff brought this action before exhausting his administrative remedies because according to Bock[8], administrative exhaustion is not a pleading requirement, so failure to include it in the Complaint is not a failure to state a claim. Plaintiff is correct that in Bock, the United States Supreme Court concluded that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints. Bock, 549 U.S. at 216. However, this decision did not eliminate the PLRA's requirement that prisoners exhaust their remedies before filing suit. Id. (citing 42 U.S.C. § 1997(e)(a)). Therefore, Plaintiff was required to exhaust his remedies before filing this lawsuit.

Plaintiff also argues that Corcoran grievance authorities did not comply with the requirement that CDCR has 30 days to reply to use-of-force staff misconduct complaints as prison officials took almost 3 years just to conclude the staff complaint investigation in grievance

---

[8] Jones v. Bock, 549 U.S. 199, 213-15 (2007).

log # CSPS-7-17-5971, and the other grievance log # CSPC-8-03589 regarding Defendant Gallagher never arrived.  Plaintiff cites Cal.Code Regs, tit. 15 § 3084.8, Appeal Time Limits, which states that "[f]irst level responses shall be completed within 30 working days from date of receipt by the appeals coordinator."  (ECF No. 61 at 38.)  Cal.Code Regs, tit. 15 § 3084.8(c)(1). Defendants' evidence shows that Plaintiff's Appeal CSPS-17-5971, filed on November 9, 2017, was delayed without a decision from 2-5-18 to 8-8-19 (see ECF No. 57-4 at 21-34 (Exh. 2)), and was not finally decided until December 24, 2019 when it was denied at the Third Level.  (ECF No. 57-5 at 3 ¶8, 10).  Plaintiff appears to argue that he exhausted his available remedies even though he filed his lawsuit before the appeal was exhausted at the Third Level as he had to wait such a long time for the decision.  Plaintiff is mistaken.  Although Title 15 requires a First Level Response within thirty days, there are exceptions to the rule.  Under § 3084(d)(2), an exception to the time limits provided in subsection 3084.8(c) is authorized [] in the event of the complexity of the decision, action, or policy requiring additional research."  § 3084(d)(2).  Here, Plaintiff was provided with notices each month or so from 2-5-18 to 8-8-19 informing him of an Exceptional Delay in Review of Appeal ("This is to notify you that the due date on the above referenced appeal has been extended for the following reason: Complexity of the decision, action, or policy") and citing CCR, 3084.8(e), which holds that:

> Except for the third level, if an exceptional delay prevents completion of the
> review within specified time limits, the appellant, within the time limits provided
> in subsection 3084(c) shall be provided an explanation of the reasons for the delay
> and the estimated completion date.

Cal.Code.Regs, tit. 15 § 3084.8(e).

Thus, the exception to the time limits rule due to complexity, which delayed the decision in Appeal log no. CSPS-7-17-5971, was authorized by § 3084(d).  Moreover, the notices of new completion dates indicate that Plaintiff still had remedies available to him when he filed his lawsuit on February 12, 2018.

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy,

and that the prisoner did not exhaust that available remedy." <u>Albino II</u>, 747 F.3d at 1172.  The Court has taken judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal.CodeRegs. tit. 15, § 3084.1(a). Thus, administrative remedies were available to Plaintiff because the CDCR had an established policy that allowed inmates to file written grievances about the conditions of their confinement. Defendants have also shown that Plaintiff was aware of the grievance process because he had filed many grievances at the prison before the November 9, 2017 incidents occurred.  (Exh. 1, ECF No. 57-4 at 6-9.)

The court finds that Plaintiff failed to exhaust his remedies for the claims in the First Amended Complaint.  Only one grievance, COR-17-5971, addressed Defendant Fugate's use of excessive force, and that grievance was not exhausted until after Plaintiff filed this lawsuit.  Only one grievance, COR-17-6271, was filed against Defendant Gallagher, and that grievance concerned Plaintiff's complaint that Defendant Gallagher took his property and would not return it.   Three other grievances filed by Plaintiff during the relevant time period did not concern Plaintiff's claims in this case.  One of them,  COR-17-6239, was a query by Plaintiff about the funds in his trust account; another, COR-8-18-1271, was a request by Plaintiff for a form; and the other, COR-18-3589, was a complaint by Plaintiff that he was pepper sprayed by C/O Guizar on June 14, 2018.

Based on the above, the court finds that Plaintiff did not exhaust his administrative remedies for the claims at issue in this case prior to filing this suit.  Therefore, Defendants' motion for summary judgment should be granted, and this case should be dismissed.

## IV.    CONCLUSION AND RECOMMENDATIONS

The court finds, based on the record before it, that Plaintiff failed to exhaust his available administrative remedies for his claims in this case against Defendants Gallagher and Fugate, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Therefore, Defendants'

///

motion for summary judgment, filed on November 10, 2021, should be granted and this case should be dismissed without prejudice.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.   Defendants Gallagher and Fugate's motion for summary judgment, filed on November 10, 2021, be GRANTED;

2.   This case be DISMISSED, without prejudice, based on Plaintiff's failure to exhaust administrative remedies before filing suit; and

3.   The Clerk be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **May 6, 2022**   _____**/s/ Gary S. Austin**_____
                                                UNITED STATES MAGISTRATE JUDGE